**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | | |
|---|---|---|
| **GEORGE THOMAS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action No.** |
| | : | **7:06-CV-81(HL)** |
| **HUBTEX MASCHINENBAU GmbH &** | : | |
| **Co KG,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

**ORDER**

Before the Court are Defendant's Motion to Exclude Testimony of Plaintiff's Expert Ruston Hunt (Doc. 25), Defendant's Motion to Exclude Testimony of Plaintiff's Expert David Brani (Doc. 26), and Defendant's Motion for Summary Judgment (Doc. 42). For the following reasons, Defendant's Motion to Exclude David Brani is denied, Defendant's Motion to Exclude Ruston Hunt is granted in part and denied in part, and Defendant's Motion for Summary Judgment is granted in part and denied in part.

**I.    BACKGROUND**

Construing the facts in the light most favorable to Plaintiff as the nonmoving party, the facts are as follows.

Propex Fabrics, Inc. has a warehouse facility located in Nashville, Georgia. From 2003 to January 2005, Plaintiff worked as a sideloader operator in the

1

beaming department of Propex's Nashville facility.  A sideloader is a kind of forklift that is used to transport loads of varying lengths around a warehouse or manufacturing facility.  Defendant Hubtex manufactured the sideloader that Plaintiff operated.

The sideloader was equipped with two lift arms, called "curl arms," mounted on each side of the machine.  Each curl arm weighs approximately 130 pounds, and the arms have to be manually adjusted horizontally to accommodate loads of varying width.  The curl arm slides across a track called an FEM plate. The only thing that prevents a curl arm from falling off the edge of the FEM plate is a single stop bolt located near the plate's edge.  The head of the stop bolt prevents the curl arms from falling off because the arms make solid contact with the head of the bolt when they are pushed to the edge of the FEM plate.

On January 20, 2005, Plaintiff was working his normal shift at Propex as a sideloader operator when he had to manually adjust the sideloader's curl arms outward to carry a beam of fabric.  As Plaintiff was standing at the outer edge of the sideloader and manually pulling the curl arm toward him, the curl arm hit the stop bolt and sheared off the bolt's head.  This caused the curl arm to slide off the edge of the FEM plate and onto Plaintiff's right foot.  As a result of this incident, Plaintiff has been diagnosed with Complex Regional Pain Syndrome in his right foot, and to date, he has not been approved to return to his regular job as a sideloader operator.

2

On August 29, 2006, Plaintiff filed suit (Doc. 1) against Defendant Hubtex under theories of strict liability and negligence based on Defendant's failure to warn of the risk that the stop bolt would fail.  In his Complaint, Plaintiff also requested punitive damages.   Defendant has filed Motions to Exclude the testimony of two of Plaintiff's experts—Dr. Brani and Dr. Hunt—as well as a Motion for Summary Judgment on all of Plaintiff's claims.

## II.    DISCUSSION

Because Plaintiff relies on his experts' opinions in opposing summary judgment, the Court will first address Defendant's <u>Daubert</u> Motions.

### A.    <u>Daubert</u> Motions

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony and provides as follows:

> If scientific, technical, or other specialized knowledge will assist the
> trier of fact to understand the evidence or to determine a fact in
> issue, a witness qualified as an expert by knowledge, skill,
> experience, training, or education, may testify thereto in the form of
> an opinion or otherwise, if (1) the testimony is based upon sufficient
> facts or data, (2) the testimony is the product of reliable principles
> and methods, and (3) the witness has applied the principles and
> methods reliably to the facts of the case.

Fed. R. Evid. 702.  Therefore, according to Rule 702, expert testimony is only

3

admissible if it satisfies three broad requirements: (1) the witness offering the testimony must have knowledge, skill, experience, training, or education that qualifies the witness as an expert; (2) the witness's opinions must be reliable; and (3) the witness's opinions must assist the trier of fact.  In addition, "[t]he burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence."  Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999).

The first test under Rule 702, therefore, is whether the witness offering the testimony is qualified to do so.  There is no bright-line rule for determining whether a given witness is qualified to offer expert testimony.  Rather, the decision is inherently case-specific.  Nevertheless, Rule 702 does offer a basic framework for evaluating a witness's qualifications by providing that the expertise must be established by one or more of the following bases: knowledge, skill, experience, training, or education.  Fed. R. Evid. 702.

In fixing the requisite level of knowledge, skill, experience, training, or education an expert witness must possess, courts are called upon to balance the advantages and disadvantages of expert testimony.  On one hand, allowing only the most qualified witnesses to serve as experts reduces the risk a jury will overvalue the opinions of a minimally qualified witness simply because the witness was classified as an expert by the court.  On the other hand, requiring

stellar qualifications of all witnesses could unnecessarily deprive the jury of helpful testimony based upon minor shortcomings in a witness's qualifications. As a result, courts liberally construe a witness's qualifications in favor of expert status and consider gaps in a witness's qualifications a matter for the jury to consider in determining what weight to give to the testimony.  See Thomas J. Kline, Inc. v. Lorillard, Inc., 878 F.2d 791, 799 (4th Cir. 1989).

A witness's qualifications must correspond to the subject matter of his or her proffered testimony.  See Jones v. Lincoln Elec. Co., 188 F.3d 709, 723 (7th Cir. 1999) (citing Carroll v. Otis Elevator Co., 896 F.2d 210, 212 (7th Cir.1990)) ("Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony.").  In other words, a witness qualified as an expert in one subject may not offer expert testimony on a different subject where the witness's qualifications have not been demonstrated. General knowledge in a field, however, is normally sufficient to qualify a witness as an expert in that field's specialties as well.  For example, most courts conclude that a general practitioner can offer expert testimony concerning medical conditions routinely treated by specialists.  See, e.g., Payton v. Abbott Labs, 780 F.2d 147, 155 (1st Cir. 1985) (holding two board-certified obstetrician-gynecologists were qualified to offer expert testimony in teratology, the study of abnormal development).  Furthermore, unlike lay witnesses, it is not

necessary that an expert witness have personal knowledge of the facts at issue in the case.  See Fed. R. Evid. 703 ("The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing.").

In addition to finding that the proposed expert is qualified, the Court must also find that the testifying witness's opinions are reliable. In Daubert v. Merrell Dow Pharmaceuticals, the Supreme Court of the United States directed district courts faced with the proffer of expert testimony to conduct "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."  509 U.S. 579, 592-93 (1993).  Although Daubert originally involved only scientific expert testimony, the Supreme Court, in Kumho Tire Co. v Carmichael, 526 U.S. 137 (1999), explained that the same type of analysis was also required when evaluating non-scientific expert testimony.

To assist courts in conducting the required assessment, the Supreme Court provided a non-exhaustive list of four factors to consider: "(1) whether the theory or technique can be tested; (2) whether it has been subjected to peer review; (3) whether the technique has a high known or potential rate of error; and (4) whether the theory has attained general acceptance within the scientific community."  Allison, 184 F.3d at 1312 (citing Daubert, 509 U.S. at 593-94). "These factors are illustrative, not exhaustive; not all of them will apply in every

case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion." United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004) (citations omitted). Thus, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." Kumho Tire, 526 U.S. at 152.

Regardless of the specific factors considered in evaluating the reliability of expert testimony, "[p]roposed testimony must be supported by appropriate validation- i.e., 'good grounds,' based on what is known." Daubert, 509 U.S. at 590. In most cases, "[t]he expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded." Fed. R. Evid. 702, advisory committee's notes. Yet, "[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Id. In any case, "[p]resenting a summary of a proffered expert's testimony in the form of conclusory statements devoid of factual or analytical support is simply not enough." Cook ex rel. Tessier v. Sheriff of Monroe County, 402 F.3d 1092, 1113 (11th Cir. 2005).

In addition to satisfying the reliability requirement, expert testimony must assist the trier of fact to decide a fact in issue. In short, "expert testimony is admissible if it concerns matters that are beyond the understanding of the

average lay person." <u>Frazier</u>, 387 F.3d at 1262.   Thus, expert testimony regarding issues within the understanding and experience of average citizens is properly excluded.  <u>United States v. Rouco</u>, 765 F.2d 983, 995 (11th Cir. 1985). Nevertheless, "expert testimony is admissible if it will simply assist the trier of fact to understand the facts already in the record, even if all it does is put those facts in context."  4 Joseph M. McLaughlin et al., Weinstein's Federal Evidence § 702.03[1] (2d ed. 2007).  However, "[p]roffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments."  <u>Frazier</u>, 387 F.3d at 1262-63.

### 1.    Motion to Exclude Dr. David Brani

Defendant seeks to exclude Dr. Brani's testimony on the ground that his testimony does not assist the trier of fact because his testimony is not relevant to any of the issues in the case.  Dr. Brani is a mechanical engineer.  He opines that the failure of the stop bolt was a result of the sideloader's original design, and that the failure was foreseeable when Defendant manufactured and designed the machine.  Defendant contends that these opinions are only relevant to a design defect claim, not a failure to warn claim.  Because Plaintiff has not asserted a design defect claim and such a claim is barred by the statute of repose, Defendant argues that Dr. Brani's opinions are irrelevant to the issues in this case.

As Plaintiff correctly notes, an element of a design defect claim is the

8

existence of a foreseeable danger.  See Zeigler v. CloWhite Co., 234 Ga. App. 627, 629, 507 S.E.2d 182, 184 (1998).  There is no duty to warn against dangers that do not exist or that are unforeseeable.  Id.  Instead, a plaintiff in a failure to warn case must prove that the manufacturer knew or reasonably should have known of the danger arising from the use of its product.  Id.  To carry his burden of proof on this element, Plaintiff relies on Dr. Brani's expert opinion that there was a foreseeable danger that the stop bolt would fail and allow the curl arm to slide off the edge of the FEM plate.  This testimony is clearly relevant to an element of Plaintiff's failure to warn claim, and Defendant's arguments to the contrary are wholly without merit.  Accordingly, Defendant's Motion to Exclude Dr. Brani is denied.

### 2.    Motion to Exclude Dr. Ruston Hunt

Dr. Hunt, Plaintiff's warnings expert, submitted an expert witness report that contains six enumerated opinions and a conclusion.  In addition, Dr. Hunt submitted an Amended Report, which contains two proposed warnings for the sideloader machine, as well as a Second Supplemental Report, which details the grounds for his opinions.  Defendant concedes that Dr. Hunt's opinions satisfy the first prong of the Daubert standard because he is qualified to render those opinions, but Defendant asserts that Dr. Hunt's opinions should be excluded because they do not satisfy Daubert's second and third prongs.  Specifically, Defendant objects to (1) Dr. Hunt's opinion that the sideloader machine

contained a dangerous condition and therefore needed a warning, (2) Dr. Hunt's proposed warnings, and (3) Dr. Hunt's opinion that the proximate cause of Plaintiff's injuries was Defendant's failure to warn Plaintiff of the sideloader's hazards.  The Court will address Defendant's objections in turn.

### a.  Opinion that the sideloader contained a dangerous condition and needed a warning

Opinion #2 of Dr. Hunt's expert report provides, "It is foreseeable that the bolt used as a stop could shear off with use and would allow the curl/lift arm to fall from the mast as it was being adjusted."  Based on his conclusion that the dangerous condition existed, Dr. Hunt states at Opinion #4 that:

> Hubtex should have attached a warning on the curl/lift arms, or at some location on the Sideloader so that the Operator could see it, that would have communicated the existence and potential severity of the hazard, the nature of the hazard, the possible consequences of the hazard and how to avoid the hazard.

(Dr. Hunt's First Expert Report).

Defendant argues that Dr. Hunt's opinions about the machine's dangerous condition and corresponding need for a warning are unreliable because Dr. Hunt has not sought to independently verify that the dangerous condition existed. Instead, Dr. Hunt's opinions are based solely on Dr. Brani's expert opinion that there was a foreseeable risk the stop bolt would fail.  According to Defendant, Dr. Hunt's opinions are rendered inadmissible by his blind reliance on the opinions of

another expert.

After reviewing Opinion #2, this Court finds that it should be excluded because it is not based on reliable principles and methods. In fact, it is not based on any principles or methods as Dr. Hunt has not performed any type of independent analysis to determine whether it was foreseeable the stop bolt would fail. Dr. Hunt admits in his 2nd Supplemental Report that it is irrelevant to him why the stop bolt failed as his role is simply "to assist the jury in understanding what steps should have been taken to protect workers if it was foreseeable" the stop bolt would fail. (Dr. Hunt's 2nd Supp. Report p. 12) (emphasis added). Thus, it is clear that Dr. Hunt has simply parroted Dr. Brani's opinion about the foreseeability of the stop bolt's failure. As a result, Opinion #2 is excluded.

The Court reaches a different conclusion with respect to the admissibility of Opinion #4.[1] In reaching Opinion #4, Dr. Hunt personally inspected the machine and independently came to the conclusion that, if the stop bolt failed, "a significant hazard existed." (Dr. Hunt's 2d Supp. Report p. 6). Based on Dr. Brani's opinion that there was a foreseeable danger the stop bolt would fail–an opinion which Defendant does not allege is based on unreliable principles or methods–Dr. Hunt concluded that the machine needed a warning because his

---

[1]Defendant apparently relies on Daubert and Federal Rule of Evidence 702 in arguing that Opinion #4 is unreliable. Defendant does not rely on Federal Rule of Evidence 703, which governs the permissible bases of expert testimony.

personal inspection of the machine revealed that a falling curl arm could cause serious injury.  Defendant contends that Opinion #4 is unreliable because it is based on another expert's opinion that the sideloader contained a foreseeable danger.

The Court disagrees with Defendant's argument.  It is well-established that an expert does not have to be "an expert about every aspect of [the] case in order to provide relevant expert testimony about a particular issue."  Westfield Ins. Co. v. J.C. Penney Corp., 466 F. Supp. 2d 1086, 1094 (W.D. Wis. 2006).  In Opinion #4, Dr. Hunt provides relevant expert testimony about a particular issue in this case:  the need for a warning.  This opinion simply builds on Dr. Brani's opinions about a different issue:  the foreseeability that the stop bolt would fail. The jury will ultimately have to decide whether it was foreseeable the stop bolt would fail, and at trial there will be evidence, in the form of Dr. Brani's opinion testimony, that it was foreseeable.  If the jury rejects Dr. Brani's opinion and finds that the machine did not contain a foreseeable danger, consideration of Dr. Hunt's warnings opinions will be unnecessary as the law does not require warnings in the absence of a foreseeable danger.  If, on the other hand, the jury does find that the machine contained a foreseeable danger, it will then have to consider Dr. Hunt's testimony about the need for a warning.  Thus, the jury will only consider Dr. Hunt's Opinion #4 if it agrees with Opinion #4's premise—i.e., that it was foreseeable the stop would fail.  In this regard, Dr. Hunt's opinion is no

different than the well-accepted practice of experts basing their opinions on assumed or hypothetical facts if there is sufficient evidence in the record to support those facts.  In other words, Opinion #4 is based on the premise that the machine contained a foreseeable danger, and Dr. Brani's opinion, which will be presented at trial, is evidence that supports this premise.   Under these circumstances, Opinion #4 is not rendered unreliable as a result of its reliance on the opinion of another expert.

### b.  Proposed warnings

Next, Defendant objects to the proposed warnings that Dr. Hunt has designed for the sideloader on the ground that Dr. Hunt has not tested the warnings.  In designing the proposed warnings, Dr. Hunt has relied on the ANSI[2] standards and has used the same methods used by other experts in his field.  In particular, Dr. Hunt followed the design guidelines in the ANSI Z535 standards, which require, among other things, a signal word, a hazard statement, a description of the possible consequences, and instructions.  In addition, Dr. Hunt is a human factors expert with impeccable credentials; he is well versed in the industry standards and practices of human factors and warnings experts.  Under these circumstances, the Court finds that Dr. Hunt's proposed warnings are sufficiently reliable to survive Defendant's Daubert challenge.  Although testing can be considered as a factor in the reliability analysis, it is not the sine qua non

---

[2]ANSI stands for "American National Standards Institute."  The ANSI is a non-profit organization that publishes safety standards for thousands of products.

of admissibility.   Defendant's Motion to Exclude Dr. Hunt on this ground is denied.

### c.  Opinion on proximate cause

Defendant objects to Dr. Hunt's opinion that the proximate cause of the accident was Defendant's failure to warn Plaintiff of the potential that the stop bolt would fail and allow the curl arm to fall from the FEM plate.   Again, Defendant objects because Dr. Hunt has not tested his proposed warnings to determine whether they would have prevented the accident.   Specifically, Defendant contends that Dr. Hunt has no basis for concluding that Plaintiff would have read and heeded the warnings, and therefore, his opinion is nothing more than unabashed speculation.   In support of its position, Defendant has cited several failure to warn cases in which courts have excluded an expert's opinion on proximate cause because the expert did not test an alternative warning.

The fact that Dr. Hunt did not test his proposed warnings does not, by itself, render inadmissible his opinion on proximate cause.   The <u>Daubert</u> inquiry is a flexible one, and courts should consider different factors depending on the case.   There are many ways in which experts can demonstrate that their opinions are based on reliable principles and methods, and testing is just one of those ways.   Thus, if Dr. Hunt can demonstrate that his opinion is based on reliable principle and methods other than testing, his proximate cause opinion will survive Defendant's <u>Daubert</u> challenge.

14

In this case, Dr. Hunt asserts that the grounds for his proximate cause opinion are that (1) when he visited the Propex facility, he noticed an environment where safety was taken seriously, (2) he sat through the depositions of two of Propex's employees, Dwight Griner and Robert Sheridan, and "was impressed with the corporate understanding and commitment to safety and training they described," and (3) literature demonstrates the effectiveness of warnings like the ones he has proposed. These reasons, along with his professional knowledge, experience, and formal training led him to conclude that it is more likely than not that the Plaintiff would have read and heeded the warnings he has proposed.

After reviewing the grounds for Dr. Hunt's proximate cause opinion, the Court concludes that it should be excluded because Dr. Hunt has failed to connect his specialized expertise to the conclusion he reaches. Although he asserts that literature demonstrates the effectiveness of warnings like the ones he has proposed, he does not cite any data or statistics about the effectiveness of warnings. Instead, he simply quotes the following passage from a treatise on warnings: "Research has verified the importance of these components for enhancing warning efficacy." (Dr. Hunt's 2d Supp. Report p. 9). Needless to say, this statement does not help the Court evaluate the reliability of his proximate cause opinion. In addition, he asserts that his experience and formalized training informed his analysis, but he does not explain how his

15

experience and training led to the conclusion he reaches.  See United States v. Frazier, 387 F.3d 1244, 1261 (11th Cir. 2006) (en banc) (holding that when a witness relies "solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.").  These general and conclusory assertions are not sufficient to establish Daubert's reliability prong.

The only specific bases that Dr. Hunt has articulated in support of his proximate cause opinion are that he noticed an environment where safety was taken seriously when he visited the Propex facility, and that he was impressed with the corporate understanding and commitment to safety and training that Mr. Griner and Mr. Sheridan demonstrated during their deposition.  Again, Dr. Hunt has not articulated how he applied his specialized knowledge to these facts to reach his conclusion.  Without demonstrating how his specialized knowledge informed his analysis, Dr. Hunt has not demonstrated that he reached his conclusion through the application of reliable principles and methods.

Moreover, without such a showing, his opinion does not assist the trier of fact as it does nothing more than tell the jury what conclusion to reach.  See United States v. Douglas, 489 F.3d 1117, 1124-25 (11th Cir. 2007) (stating that expert testimony must assist the trier of fact, "through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a

16

fact in issue").  The jury can reach its own conclusion on proximate cause based on these facts, and absent an explanation of how his specialized knowledge was applied to these facts, Dr. Hunt's proximate cause opinion brings nothing to the judicial process.

In conclusion, the Court deems inadmissible Dr. Hunt's opinion that the sideloader contained a foreseeable danger, and his opinion that the failure to warn was the proximate cause of the accident.  Dr. Hunt can, however, testify that the sideloader needed warnings, and his proposed warnings are admissible.

## B.    Motion for Summary Judgment

Summary judgment must be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  When considering a motion for summary judgment, the Court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the nonmoving party.  Id. at 254-55. The Court may not, however, make credibility determinations or weigh the evidence.  Id. at 255; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

17

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotation marks omitted). If the moving party meets this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the nonmoving party is not entitled to a judgment as a matter of law. Id. at 324-26. This evidence must consist of more than mere conclusory allegations. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Under this scheme summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

In this case, Plaintiff has asserted claims against Defendant for strict liability and negligence based on Defendant's failure to warn him of the sideloader's dangerous condition. Defendant has moved for summary judgment on several grounds. First, Plaintiff's strict liability claim is barred by the statute of repose. Second, if the Court grants Defendant's Daubert Motions and excludes Plaintiff's experts, Plaintiff will not be able to prove that Defendant failed to

provide adequate warnings to Plaintiff, or that any alleged failure to warn was the proximate cause of his injuries.  Third, Plaintiff cannot show that Defendant had a duty to warn of any alleged dangers because the sideloader machine was substantially modified after Defendant sold and distributed the machine.  Fourth, Plaintiff cannot show that any alleged failure to warn was the proximate cause of his injuries because he did not read the operator's manual nor did he pay attention to the "label" on the machine.   Last, Defendant seeks summary judgment on Plaintiff's punitive damages claim because Plaintiff cannot establish the elements of his substantive claim, and even if he could, Plaintiff cannot meet his burden of showing that he is entitled to punitive damages.  The Court will address Defendant's arguments in turn.

### 1.  Statute of Repose

The sideloader machine involved in this case was sold to and first used by Propex approximately thirteen years before Plaintiff's accident.  Georgia's statute of repose for products liability actions provides that "[n]o action shall be commenced pursuant to this subsection with respect to an injury after ten years from the date of the first sale for use or consumption of the personal property causing or otherwise bringing about the injury."  O.C.G.A. § 51-1-11(b)(2).  This ten year statute of repose applies to both strict liability and negligence claims, but there are three exceptions.  See O.C.G.A. § 51-1-11(c).  The only exception that is applicable in this case is the one that provides an exception for negligent

19

failure to warn claims.  See Allison v. McGhan Medical Corp., 184 F.3d 1300, 1307 (11th Cir. 1999) (holding that negligent failure to warn claims are excepted from the statute of repose and rejecting plaintiff's contention that strict liability failure to warn claims are also excepted).   Because Defendant sold the sideloader to Propex over ten years ago, Defendant is entitled to summary judgment on Plaintiff's strict liability failure to warn claim. The only claim that survives the statute of repose is Plaintiff's negligent failure to warn claim.

### 2.  Expert Testimony

Defendant's next argument is premised on the assumption that this Court would grant its Daubert Motions.  According to Defendant, if this Court excluded both of Plaintiff's experts from testifying, Plaintiff would be unable to establish the elements of his negligent failure to warn claim.  As with any negligence claim, a negligent failure to warn claim requires that a plaintiff prove the elements of duty, breach, and causation.  To establish a duty to warn, the Plaintiff must establish that the manufacturer knew or reasonably should have known of the dangers arising out of the use of its product.  Chrysler Corp. v. Batten, 264 Ga. 723, 724, 450 S.E.2d 208, 211 (1994).  The duty to warn can be breached by "(1) failing to adequately communicate the warnings to the ultimate user or (2) failing to provide an adequate warning of the product's potential risks."  Thornton v. E.I. Du Pont De Nemours and Co., 22 F.3d 284, 289 (11th Cir. 1994).  Last, the plaintiff must prove that the manufacturer's breach of its duty to warn was the proximate

cause of the plaintiff's injuries.  See Henry v. General Motors Corp., 60 F.3d 1545, 1548 (11th Cir. 1995).

In this case, as stated above, the Court denied Defendant's Motion to Exclude Dr. Brani's testimony and only partially granted its Motion to Exclude Dr. Hunt.   Under the Court's ruling, Dr. Brani will be allowed to testify that the sideloader contained a foreseeable danger, and Dr. Hunt will be allowed to testify that the sideloader machine should have contained a warning and his proposed warnings are admissible.  Thus, there will be expert testimony that establishes the elements of duty and breach.  The only element on which there will not be expert testimony is proximate cause.   Accordingly, the Court must consider whether Plaintiff must establish the proximate cause element through expert testimony.

In a products liability case, expert testimony may be required "when the product is complex and technical in nature."  Goree v. Winnebago Industries, Inc., 958 F.2d 1537, 1541 (11th Cir. 1992).  But expert testimony is not required "when a jury could reasonably infer from the product's failure under all the attendant circumstances that its defective condition caused the plaintiff's injuries."  Id. (internal quotations omitted).  In other words, "expert testimony is not necessary if the primary facts are accurately presented to the jury and the jurors are as capable of understanding and drawing conclusions from the facts as an expert witness."  Worsham v. A.H. Robins Co., 734 F.2d 676, 685 (11th Cir.

1984).

Here, the machine at issue did not contain any warnings about the risk of the stop bolt failing.  Plaintiff contends that the machine should have contained a warning about this risk, and that he would have read and heeded such a warning had one been included.  There is apparently no dispute that his injuries would have been prevented if Plaintiff would have heeded a warning similar to the ones Dr. Hunt has proposed.  The only issue the jury needs to resolve is whether it is more likely than not that Plaintiff would have read and heeded a proper warning.[1] This issue is not complex, and accordingly, the Court holds that Plaintiff does not need expert testimony to establish the element of proximate cause.  Whether there is sufficient evidence in the record to create a genuine issue of material fact on the proximate cause element will be addressed later in this Order.

### 3.  Post-sale Modification

Next, Defendant contends that it is entitled to summary judgment on Plaintiff's failure to warn claim because Propex made post-sale modifications to the stop bolt, the stop bolt hole, and the curling arm.  Under Georgia law:

A duty to warn of danger in the use of a product extends only to the use of the product in the manner reasonably contemplated and anticipated by the manufacturer.  If the product is altered or modified

---

1 Defendant's post-sale modification argument is essentially a proximate cause argument, but it does not relate to the issue of whether Plaintiff would have heeded a proper warning.  Instead, the modification argument is premised on the notion that a product cannot be shown to be the proximate cause of a plaintiff's injuries if it was substantially modified after it was sold.  The Court's discussion of proximate cause in this section pertains to Defendant's contention that Plaintiff needs expert testimony to establish that the warnings would have prevented the accident.

in any way, the manufacturer may not be liable if it could not foresee
that the product would be thus altered.  The manufacturer has no
duty to protect the user or consumer against such an unforeseeable
intervening cause.

Pepper v. Selig Chemical Indus., 161 Ga. App. 548, 551, 288 S.E.2d 693, 696
(1982).  "A post-sale alteration is unforeseeable if it is so substantial that the
injury cannot be traced to the manufacturer's original design."  Williams v. Web
Packaging Corp., No. 5:97-CV-179-3, 2002 WL 389158, *2 (Mar. 12, 2002 M.D.
Ga.).

     In this case, the original 12 mm stop bolt was replaced with a slightly larger
½ inch bolt, which was inserted into the same hole as the original.  Because the
½ bolt was slightly larger, Propex redrilled the stop bolt hole so the new bolt
would fit correctly.   According to Dr. Brani, these alternations are not what
caused the stop bolt to fail on the day in question.  Instead, Dr. Brani opines that
the cause of the stop bolt's failure was Defendant's original design of the stop
bolt mechanism, which did not allow sufficient distance between the stop bolt and
the edge of the FEM plate.  In other words, the stop bolt mechanism was
destined to fail, regardless of whether the stop bolt was 12 mm or ½ inch.
Moreover, Dr. Brani opines that the switch to the ½ bolt was both foreseeable
and acceptable industry practice.  Based on these facts, there is a genuine issue
of material fact as to whether Plaintiff's injuries are the result of a substantial

post-sale modification, or whether, as Plaintiff contends, his injuries can be traced to the manufacturer's original design.  See Williams, 2002 WL 389158, at *2.

As to the curl arms, Propex's procedure for replacing a curl arm was to have a local certified welder in Valdosta fabricate a new one that was virtually identical to the old one.  Defendant has not pointed to anything in the record that establishes that the new curl arms were any different than the ones that Defendant originally provided with the sideloader.  Thus, the Court fails to see how Propex's installation of new curl arms was an unforeseeable alteration. Defendant's Motion for Summary Judgment based on this argument is denied.

### 4.  Proximate Cause

Last, Defendant contends that it is entitled to summary judgment because Plaintiff cannot establish that Defendant's failure to warn was the proximate cause of his injuries.  Specifically, Defendant contends that there is no evidence in the record from which a reasonable jury could conclude that it is more likely than not that Plaintiff would have read and heeded an adequate warning.  In support of this argument, Defendant relies on the fact that Plaintiff failed to read the operator's manual and failed to pay attention to "the label" on the machine.[2]

The issue of proximate cause is seldom appropriate for summary adjudication.  Anderson v. Sears Roebuck & Co., 664 S.E.2d 911, 914 (Ga. App.

---

2 To the extent that Defendant has raised certain arguments for the first time in its reply brief, the Court need not consider them.  See Robinson v. Intercorp, 512 F. Supp. 2d 1307, 1316 (N.D. Ga. 2007).

2008).  Only in plain and undisputed cases is it appropriate for a court to resolve this issue as a matter of law.  Id.  "[W]here a plaintiff does not read an allegedly inadequate warning, the adequacy of the warning's contents cannot be a proximate cause of the plaintiff's injuries."  Camden Oil Co. v. Jackson, 270 Ga. App. 837, 840, 609 S.E.2d 356, 358 (2004).

In this case, the "label" that Defendant contends that Plaintiff did not read is the sideloader's serial number plate.  A serial number plate is clearly not the same as a warning, and Defendant's attempt to equate the two is absurd. Defendant has not pointed to any evidence that establishes that Plaintiff failed to read any warnings on the machine.  Moreover, Plaintiff is not challenging the adequacy of the contents of any warnings as the sideloader did not contain any warnings about this particular risk; he is challenging the adequacy of Defendant's efforts to communicate to him the risk that the stop bolt would fail.  See Id. ("[F]ailure to read a warning does not bar recovery when the plaintiff is challenging the adequacy of the efforts of the manufacturer or seller to communicate the dangers of the product to the buyer or user.").

As to the operator's manual, Plaintiff testified at his deposition that he did not read the manual provided to him, but there is evidence in the record that Propex's practice is to communicate all manufacturer's warnings to its employees.  Furthermore, it is Propex's practice to provide to its employees all instructions from the manufacturer about how to operate a particular piece of

equipment.   Based on these employment practices, a reasonable jury could conclude that it is more likely that not that Plaintiff would have been aware of a warning that concerned the risk of the stop bolt failing, regardless of whether that warning would have been included on the sideloader itself or in the operator's manual.

There is also evidence that Plaintiff would have heeded an adequate warning.   Shellie Thomas, a nineteen year Propex employee, testified at his deposition that he trained Plaintiff how to use the sideloader machine and that he trained him slowly, step-by-step.  Mr. Thomas, who observed Plaintiff perform his job on a daily basis, further testified that Plaintiff was a safe employee.  Based on these facts, and the evidence that establishes that Propex emphasized safety as a top priority, a reasonable jury could conclude that it is more likely than not that Plaintiff would have heeded an adequate warning if one had been given. Defendant's Motion for Summary Judgment based on the proximate cause issue is denied.

### 5.  Punitive damages

Defendant asserts that if Plaintiff's substantive claims survive summary judgment, it is entitled to summary judgment on Plaintiff's request for punitive damages.  Under Georgia law, punitive damages "may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness,

26

oppression, or that entire want of care which would raise the presumption of conscious indifferent to consequences." O.C.G.A. § 51-12-5.1(b). As Plaintiff has not pointed to anything in the record that demonstrates that he could meet this burden at trial, Defendant is entitled to summary judgment on Plaintiff's claim for punitive damages.

**III.   CONCLUSION**

For the foregoing reasons, Defendant's Motion to Exclude Dr. Brani is denied, Defendant's Motion to Exclude Dr. Hunt is granted in part and denied in part, and Defendant's Motion for Summary Judgment is granted in part and denied in part.

**SO ORDERED**, this the 23rd day of September, 2008

*s/  Hugh Lawson*
**HUGH LAWSON, Judge**

dhc

27